IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

ADAMS COUNTY SELF-STORAGE, LTD,
LIABILITY CO.,

    Plaintiff,

v.

MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA,

    Defendant.

**COMPLAINT AND JURY DEMAND**

**COMES NOW** Plaintiff, Adams County Self-Storage, Ltd. Liability Co. ("Plaintiff"), by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, Mitsui Sumitomo Insurance Company of America ("Defendant"), and in support of its Complaint, allege and aver as follows:

**PARTIES**

1.    Plaintiff, Adams County Self-Storage, Ltd. Liability Co. ("Plaintiff") is a Colorado limited liability company with a principal office mailing address of 4880 Pearl Street, Boulder, Colorado 80301.

2.    Defendant, Mitsui Sumitomo Insurance Company of America ("Defendant"), is a New York corporation with an office located at 15 Independent Blvd., Warren, New Jersey 07059-2713, and can be served with process through its registered agent: Division of Insurance, 1560 Broadway, Denver, Colorado 80202.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

4. Plaintiff is the owner of certain real property located at 5999 Pecos Street, Denver, Adams County, Colorado 80221-6646 (the "Property").

5. The Property includes structures, business property, buildings, storage containers, and business personal property used in the self-storage business.

6. Defendant issued a policy of insurance to Plaintiff under Policy Number SSP 2812549.

7. The Policy was issued with effective dates of April 5, 2017 through April 5, 2018. A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

8. The Policy is an all risk policy of insurance.

9. The Policy is a replacement cost value policy and covers loss to Plaintiff's Property.

10. The Policy provides coverage for direct physical loss of or damage to covered property caused by an accident.

11. The Policy broadly defines "accident" as an undesigned, unexpected and rapidly occurring event.

12. The Policy covers loss of accrued rental or lease charges for storage spaces rendered uncollectible because of a covered business property loss.

13. The Policy covers loss of net income directly resulting from necessary interruption of business because of direct physical loss of or damage to covered Property.

.
.
.

14. The Policy provides for the repair, rebuild, or replacement of damaged materials with other materials of like kind and quality.

15. The Policy does not include a cosmetic endorsement.

16. The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

17. The Policy does not require the failure of any portion of the property for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

18. The Policy provides coverage for damage to any portion of the property that alters the physical appearance of any such area.

19. Under the Policy, Defendant is obligated to pay for direct physical loss and damage to the insured Property resulting from hail or wind.

20. Under the Policy, Defendant agreed to adjust all losses with its insured fairly and timely.

21. Plaintiff paid the premiums due under the Policy in a timely manner.

22. Plaintiff performed all duties and responsibilities required of it under the Policy.

23. On or about May 8, 2017, during the Policy period, Plaintiff suffered a loss at the insured Property due to a hail and wind storm.

24. The hail and wind storm that occurred on May 8, 2017, is an undesigned, unexpected and rapidly occurring event.

25. The hail and wind storm caused hail to fall on the Property, damaging the buildings and metal storage containers located on the Property, as well as damages relating to cleanup,

construction costs associated with the investigation, redesign, and rebuilding process; professional fees associated with the investigation, redesign, and rebuilding process; loss of use/rental value; lost income/rent; and lost income/rent earning capacity of the Property and the buildings and storage containers forming a part thereof.

26. The hail and wind storm caused direct physical loss and/or damage to over eight hundred metal storage containers located on the Property.

27. The damage from the hail and wind storm constituted a covered loss under the Policy.

28. The direct physical loss of or damage to Plaintiff's covered property resulting from the hail and wind storm that occurred on or about May 8, 2017, resulted in financial loss to Plaintiff.

29. Plaintiff timely reported the covered loss and damage to Defendant on or about May 10, 2017.

30. Defendant assigned Claim Number 2812549-00003 to Plaintiff's Property loss.

31. Defendant retained an Illinois based independent claims management company, VeriClaim, Inc. ("VeriClaim"), to assist with the investigation and adjustment of Plaintiff's claim.

32. Plaintiff hired a general contractor, Evers General Construction, to assist with the repair of the damages to the Property.

33. On or about May 12, 2017, VeriClaim performed an initial inspection of the Property.

34. During its initial inspection, VeriClaim observed hail damage to the metal storage containers located on the Property.

35. On or about May 19, 2017, VeriClaim generated a damage estimate which outlined $450,984.34 in replacement cost value covered damages ("Defendant's First Damage Estimate"). A copy of Defendant's First Damage Estimate has been attached hereto as **Exhibit "B."**

36. Plaintiff would be reasonably likely to incur the services of a general contractor due to the number of trades required to perform the repairs outlined within VeriClaim's First Damage Estimate.

37. Plaintiff would be reasonably likely to incur the services of a general contractor due to the complexity of repairs outlined within Defendant's First Damage Estimate.

38. Plaintiff would be reasonably likely to incur the services of a general contractor to coordinate the scope of repairs outlined within Defendant's First Damage Estimate.

39. Defendant's First Damage Estimate did not provide for general contractor overhead and profit.

40. Defendant's First Damage Estimate did not utilize Xactimate.

41. Defendant's First Damage Estimate did not include damages to the metal storage containers located on the Property.

42. On or about September 6, 2017, Plaintiff's general contractor, Evers, provided Defendant with an estimate which outlined $1,275,174.73 in replacement cost value covered damages to the damaged buildings on the Property ("Evers Estimate"). A copy of the Evers' Estimate has been attached hereto as **Exhibit "C."**

43. On or about October 4, 2017, Defendant provided Plaintiff's general contractor, Evers, with a copy of its revised building damage estimate which outlined $1,247,546.03 in replacement cost value covered damages to the buildings on the Property ("Defendant's Second

Damage Estimate"). A copy of Defendant's Second Damage Estimate is attached hereto as **Exhibit "D."**

44. Defendant's Second Damage Estimate included an additional $607,504.07 in covered building damages not provided within its first damage estimate.

45. Defendant's failure to include within Defendant's First Damage Estimate the covered building damages subsequently provided for within Defendant's Second Damage Estimate resulted in the delay in payment of covered insurance benefits to Plaintiff in the amount of $607,504.07 without a reasonable basis.

46. Defendant's Second Damage Estimate included an additional $189,057.62 in covered damages to twenty-six metal storage containers located on the Property.

47. Defendant's failure to include within Defendant's First Damage Estimate the covered damages to twenty-six metal storage containers subsequently provided for within Defendant's Second Damage Estimate resulted in the delay in payment of covered insurance benefits to Plaintiff in the amount of $189,057.62 without a reasonable basis.

48. Defendant's Second Damage Estimate included an additional $207,151.66 related to general contractor overhead and profit not provided within its first damage estimate.

49. Defendant's Second Damage Estimate did not include damages to the additional eight hundred four metal storage containers located on the Property that sustained direct physical damage resulting from the hail and wind storm that occurred on or about May 8, 2017.

50. When utilizing the same pricing utilized by Defendant's in its Second Damage Estimate for the replacement of twenty-six metal storage containers, Defendant's failure to provide for damages to the additional eight hundred four metal storage containers resulted in the unreasonable delay and denial of covered benefits to Plaintiff in the amount of $5,499,350.35.

51. On or about November 8, 2017, Defendant issued a check in the amount of $752,939.07.

52. On or about November 17, 2017, Plaintiff retained a Colorado licensed public adjusting firm, Claim Adjusters Group ("CAG"), to assist with the investigation and adjustment of its claim for damages to the metal storage containers located on the Property.

53. On or about December 1, 2017, Plaintiff's representative, CAG, provided Defendant with a copy of its damages for the eight hundred four damaged metal storage containers located on the Property which outlined replacement cost value covered damages in the amount of $5,765,921.41 ("CAG Metal Container Damage Estimate"). A copy of the CAG Metal Container Damage Estimate is attached hereto as **Exhibit "E."**

54. On or about December 14, 2017, Plaintiff's representative, CAG, provided Defendant with a copy of its building damage estimate which outlined replacement cost value covered damages in the amount of $1,459,009.30 ("CAG Building Damage Estimate"). A copy of the CAG Building Damage Estimate has been attached hereto as **Exhibit "F."**

55. On or about December 18, 2017, Defendant's representative, David Hannon of VeriClaim, advised Plaintiff's representative, CAG, that he observed and photographed damage to the metal containers located on the Property during his inspection of the Property.

56. On or about December 18, 2017, Plaintiff executed a Sworn Statement in Proof of Loss in the amount of $7,224,930.71 ("Proof of Loss"). A copy of Plaintiff's Proof of Loss has been attached hereto as **Exhibit "G."**

57. On or about December 19, 2017, Plaintiff's representative, CAG, attempted to follow up with Defendant to determine the status of the claim and status of Defendant's formal, written response to the coverage analysis contained within CAG's prior correspondence.

58. On or about December 21, 2017, Defendant issued correspondence to Plaintiff stating that its claim and Proof of Loss were in abeyance.

59. Defendant failed to formally respond in writing to the coverage analysis that was contained in Plaintiff's letters dated January 1, 2018, January 10, 2018, January 25, 2018, and January 26, 2018 or otherwise specifically address the additional facts and legal presentation supporting coverage that were contained therein.

60. On or about February 22, 2018, Plaintiff followed up with Defendant again to provide updated information regarding Plaintiff's damages, to determine the status of its claim, and to determine the status of Defendant's formal, written response to the coverage analysis that was contained in Plaintiff's letters dated February 6, 2018, and February 17, 2018.

61. Defendant failed to formally respond in writing to the coverage analysis contained within Plaintiff's letters referenced above, or to Plaintiff's follow up letters dated March 1, 2018, March 8, 2018, March 13, 2018, March 17, 2018, March 21, 2018, March 30, 2018, April 6, 2018, April 9, 2018, April 12, 2018, April 17, 2018, and April 23, 2018.

62. On or about April 20, 2018, nearly one year after the hail and wind storm, Defendant retained an engineering firm, Madsen, Kneppers, and Associates ("MKA"), to inspect the Property.

63. On or about April 20, 2018, MKA performed an inspection of the Property.

64. To date, Defendant has failed to provide the results of the MKS inspection to Plaintiff.

65. On or about April 30, 2018, Plaintiff and Defendant entered into an agreement to toll the one-year contractual statute of limitation period, as set forth in the Policy, to August 8, 2018.

66. On or about June 13, 2018, Defendant provided Plaintiff with its third damage estimate which outlined $1,400,712.30 in replacement cost value covered damages ("Defendant Third Damage Estimate"). A copy of Defendant's Third Damage Estimate is attached hereto as **Exhibit "H."**

67. Defendant's Third Damage Estimate included an additional $153,166.27 in covered building damages not provided within Defendant's First or Second Damage Estimates.

68. Defendant's failure to include within its First or Second Damage Estimate the covered damages subsequently provided for within Defendant's Third Damage Estimate resulted in the delay in payment of covered insurance benefits to Plaintiff in the amount of $153,166.27 without a reasonable basis.

69. On or about June 14, 2018, Defendant issued a check to Plaintiff in the amount of $105,336.16.

70. On or about April 30, 2018, Plaintiff entered into a Tolling Agreement. A copy of the Tolling Agreement is attached hereto as **Exhibit "I."**

71. The Tolling Agreement tolled the running of any contractual limitation and/or statute of limitation and the Policy's "Suit Against Us" provision for the Plaintiff's insurance claim related to the loss that occurred on May 8, 2017, and/or common law and/or statutory claims for breach of the obligations of the Policy and/or unreasonable delay, denial, or bad faith on the part of Defendant in responding to the Plaintiff's claims under the Policy.

72. The Tolling Agreement tolled the rights and provisions stated in paragraph 69 to the earlier of 11:59 p.m. Mountain Daylight Time on August 8, 2018, or at 11:59 p.m. Mountain Daylight Time on the tenth day after one of the parties gives written notice that this Agreement is terminated, or upon the full and complete resolution of Plaintiff's claim.

73. As of 11:59 p.m., August 8, 2018, neither party had provided written notice to terminate the Tolling Agreement.

74. Defendant's failure to pay the claim in full has resulted in a breach of contract.

75. Defendant's failure to pay the claim in full has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

76. Defendant's failure to pay the claim in full has resulted in financial hardship to Plaintiff.

77. It is apparent from Defendant's conduct that Defendant has adopted a plan or approach to delay, as much as possible, its handling and payment of the claim.

78. Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

79. Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Defendant.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

80. Plaintiff realleges and reaffirms Paragraphs 1-78 as if fully set forth herein.

81. Plaintiff purchased an all risk policy requiring Defendant to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

82. The Policy between Plaintiff and Defendant is a binding contract.

83. Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Defendant.

84. Defendant has denied certain covered damages and continues to delay and deny certain claimed damages.

85. Defendant's failure to honor its obligations under the Policy is a breach of contract.

86. Defendant's breach of contract has damaged, and continues to damage, Plaintiff.

87. Plaintiff is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, Adams County Self-Storage, Ltd. Liability Co., respectfully requests this Court enter judgment against, Defendant, Mitsui Sumitomo Insurance Company of America, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

88. Plaintiff realleges and reaffirms Paragraphs 1-86 as if fully set forth herein.

89. Under the Policy and Colorado law, Defendant had a duty to act reasonably and in good faith in the handling of Plaintiff's claim.

90. Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

91. Under the Policy and Colorado law, Defendant owes Plaintiff the duty of good faith and fair dealing.

92. At all times material hereto, Defendant had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

93. At all times materials hereto, Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

94. At all times material hereto, Defendant had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

95. Defendant sold Plaintiff the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

96. Defendant knew that the Policy was purchased to protect the Property in the event of a loss.

97. Plaintiff has cooperated with Defendant in the processing of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

98. Plaintiff has cooperated with Defendant in the investigation of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

99. Plaintiff has not erected any obstacles to Defendant's ability to investigate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

100. Plaintiff has not erected any obstacles to Defendant's ability to evaluate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

101. Defendant disregarded the validity of Plaintiff's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

102. Despite observing covered damage to the metal storage containers located on the Property during its inspection, Defendant failed to include damages to the metal storage containers within its first or second damage estimates.

103. Defendant failed to treat Plaintiff's interests with equal regard to its own.

104. Defendant mischaracterized the evidence to the benefit of itself.

105. Defendant failed to be open and honest in its dealings with Plaintiff.

106. Defendant failed to conduct a full, fair, and prompt investigation of the claim.

107. Defendant underpaid Plaintiff's claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

108. Defendant underpaid Plaintiff's claim by failing to objectively evaluate Plaintiff's claim based on all available evidence, and not just evidence which Defendant believes supports its position.

109. Defendant decision to underpay the benefits owed to Plaintiff was intentional and not accidental.

110. Defendant knew that its denial to pay the benefits owed under the Policy would cause Plaintiff financial hardship.

111. Defendant failed to assist Plaintiff with the presentation of its claim.

112. Defendant breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss.

113. Defendant breached its duty of good faith and fair dealing by conducting an outcome-oriented investigation of Plaintiff's loss.

114. Defendant breached its duty of good faith and fair dealing by failing to provide Plaintiff with the consultant reports being relied upon by Defendant to underpay Plaintiff's claim.

115. Defendant breached its duty of good faith and fair dealing by providing a repair estimate which does not properly indemnify Plaintiff.

116. Defendant breached its duty of good faith and fair dealing by underpaying Plaintiff's claim without having documented a reasonable investigation based upon all information.

117. Defendant breached its duty of good faith and fair dealing by failing to pay for all direct physical loss and/or damages resulting from a hail and/or wind storm occurring on May 8, 2017.

118. Defendant failed to conduct a thorough and timely investigation of Plaintiff's claim in accordance with insurance industry claims handling standards and practices.

119. Among other circumstances, Defendant has committed unfair settlement practices including, without limitation:

    (a) C.R.S. § 10-3-1104(h)(II), in that Defendant willfully failed to acknowledge and/or act reasonably promptly upon communications with respect to Plaintiff's claim arising under the Policy;

    (b) C.R.S. § 10-3-1104(h)(III), in that Defendant willfully failed to adopt and/or implement reasonable standards for the prompt investigation of Plaintiff's claim arising under the Policy;

    (c) C.R.S. § 10-3-1104(h)(IV), in that Defendant willfully refused to pay Plaintiff's claim without conducting a reasonable investigation based upon all available information;

    (d) C.R.S. § 10-3-1104(h)(VI), in that Defendant willfully did not attempt in good faith to effectuate a prompt, fair, or equitable settlement of Plaintiff's claim under circumstances where liability has become reasonably clear;

    (e) C.R.S. § 10-3-1104(h)(VII), in that Defendant willfully compelled Plaintiff to institute litigation to recover amounts due under the Policy by offering substantially less than the amounts ultimately recovered in this action by Plaintiff; and

    (f) C.R.S. § 10-3-1104(h)(XIV), in that Defendant willfully failed to promptly provide a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for its delay in responding to or denial of Plaintiff's claim or for its lack of an offer of a compromise settlement.

120. Defendant improperly denied Plaintiff's claim to reduce overall claims payments.

121. Defendant improperly denied Plaintiff's claim to increase profits.

122. Defendant improperly denied Plaintiff's claim to maintain its loss ratio.

123. Defendant improperly denied Plaintiff's claim to meet department goals.

124. Defendant's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Plaintiff.

125. Defendant improperly denied Plaintiff's claim to reduce the average amount paid on overall claims.

126. Defendant has committed unfair claim settlement practices as alleged in the preceding paragraphs of Plaintiff's Complaint.

127. Defendant's conduct constitutes a bad faith breach of the insurance contract.

128. Defendant has committed such actions with such frequency as to indicate a general business practice.

129. As a direct and proximate result of Defendant's actions, Plaintiff has:

    (a) incurred increased costs to repair, restore and/or replace the significant property damage;
    (b) suffered damages as a proximate result of the misconduct alleged; and
    (c) suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, public adjuster costs and fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Adams County Self-Storage, Ltd. Liability Co., respectfully requests this Court enter judgment against Defendant, Mitsui Sumitomo Insurance Company of America, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

130. Plaintiff re-alleges and reaffirms Paragraphs 1-128 as though fully set forth herein.

131.   Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

132.   Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

133.   Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

134.   Plaintiff suffered a loss covered by the Policy and submitted a claim for that loss to Defendant.

135.   The claimed loss and damage submitted under claim number 214-414-16 was covered by the Policy and Plaintiff was owed covered benefits under the Policy.

136.   Defendant delayed payment of covered benefits without a reasonable basis for its actions.

137.   Defendant denied payment of covered benefits without a reasonable basis for its actions.

138.   Among other circumstances, Defendant has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Plaintiff's Complaint.

139.   Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

140.   Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by failing to timely investigate its insured's loss.

141. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate without having documented a reasonable investigation based upon all information.

142. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate which did not include general contractor overhead and profit.

143. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate which did not include covered damages to the metal storage containers located on the Property.

144. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate which did not utilize Xactimate.

145. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate which did not include all covered damages.

146. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first damage estimate which was $796,561.69 lower than its second damage estimate.

147. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a second damage estimate which did not include covered damages to the metal storage containers located on the Property.

148. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by issuing a first and second damage estimate which failed to include $153,166.27 subsequently provided in its third damage estimate.

149. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to retain the services of professionals to assist with the investigation and adjustment of the claim.

150. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by unnecessarily prolonging its investigation of Plaintiff's claim.

151. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by providing Plaintiff with inadequate settlement offers.

152. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by omitting obvious covered damages in an effort to effectuate a deceptively low settlement.

153. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action by providing incomplete damage estimates.

154. Despite clear evidence of covered damages to the Property, Defendant continued to delay and deny indemnification of its own insured without a reasonable basis for doing.

155. Defendant's actions in the adjustment of Plaintiff's claim demonstrate an unmistakable complete delay of its insured's benefits without a reasonable basis for its actions.

156. Defendant unreasonably denied and delayed payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to retain its own professionals to help properly adjust the loss.

157. Despite receipt of Plaintiff's comprehensive estimate, Defendant denied and delayed payment of covered benefits without a reasonable basis for doing so.

158. Defendant unreasonably delayed and denied Plaintiff's claim to reduce overall claims payments.

159. Defendant unreasonably delayed and denied Plaintiff's claim to increase profits.

160. Defendant unreasonably delayed and denied Plaintiff's claim to maintain its loss ratio.

161. Defendant unreasonably delayed and denied Plaintiff's claim to reduce the average amount paid on overall claims.

162. Defendant unreasonably delayed and denied Plaintiff's claim by asserting coverage positions that it knew were without merit.

163. Defendant's actions were intended to dissuade Plaintiff in pursuing benefits due and owing under the terms of the policy in bad faith.

164. Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Adams County Self-Storage, Ltd. Liability Co., respectfully requests this Court enter judgment against Defendant, Mitsui Sumitomo Insurance Company of America, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

165. Plaintiff requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 9th day of August, 2018

/s/ *Timothy G. Burchard*
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.

        Colorado Bar No.: 45614
        Timothy G. Burchard, II
        Colorado Bar No.: 48635
        Merlin Law Group, PA
        1001 17th Street, Ste. 1150
        Denver, CO 80202
        Telephone:  720-665-9680
        Facsimile:   720-665-9681
        E-Mail: lbache@merlinlawgroup.com
        E-Mail: jbukowski@merlinlawgroup.com
        E-Mail: tburchard@merlinlawgroup.com